VONNIE GARDNER *v.* ALVIN W. PERKINS, Personal Representative of the Estate of Jesse R. Gardner

[No. 645, September Term, 1978.]

*Decided March 8, 1979.*

The cause was argued before MELVIN, LISS and COUCH, JJ.

*Joel L. Katz* for appellant.

*Peter W. Collery,* with whom was *Richard M. McGill* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Algernon Charles Swinburne (1837-1909) in his poem "Dolores" must have foreseen the sorrows of the marriage

of Vonnie Gardner, appellant herein, and her husband, Melvin G. Gardner, deceased, when he wrote[1]

> For the crown of our eye as it closes
> Is darkness, the fruit there of dust;
> No thorns go as deep as a rose's,
> And love is more cruel than lust.
> Time turns the old days to derision,
> Our loves into corpses or wives;
> *And marriage and death and division*
> Make barren our lives. (Emphasis supplied)

Vonnie Gardner and the decedent, Melvin R. Gardner, were married on August 1, 1947. From the date of their marriage until Melvin Gardner left Maryland in 1954, the decedent was employed in a Maryland shipyard, and both parties lived in this State as husband and wife. In the early part of 1954, the shipyard was closed for a period of time, and on August 1, 1954, Mr. Gardner left Maryland to look for work. At trial, the appellant testified that it was her understanding that her husband would attempt to find work elsewhere, and if he were successful, he would send for her. About a month after his departure from Maryland, his wife stated that she had received a letter from Mr. Gardner which indicated that he had gone to Indiana. She later learned that her husband had driven a tractor-trailer in Indiana and then had gone into the used furniture business there on his own. She testified that shortly after he left Maryland she wrote asking him to return, and that during his absence he wrote her four or five times. In one of his letters to her, he stated that he would return to Maryland after he had disposed of the stock of his furniture business. He did return on August 1, 1955.

While he was in Indiana, the decedent, on March 22, 1955, filed suit in Indiana for an absolute divorce from the appellant and obtained a final Indiana divorce decree dated May 26, 1955. Appellant testified that she had received no notice of the Indiana proceeding, nor was she aware of the divorce decree until her husband exhibited it to her upon his return

---

1. Dolores [1866] stanza 20.

to Maryland on August 1, 1955. She testified she thought the decree was a joke, and that nothing further was said about the decree from that point until her husband's death in November of 1973. She testified, and there was no contradiction of her testimony, that she and Mr. Gardner thereafter lived together as husband and wife in Calvert County until his death. Appellant entered an agreement into evidence dated the 20th day of February, 1961 by the terms of which the Gardners, designated as husband and wife, purchased a mortgage from one Nina V. Meade which involved property located in Calvert County and owned by Frank Hawkins and his wife. In addition, Mr. Gardner and the appellant were partners in a liquor store located in Huntingtown, Maryland which they were operating at the time of Mr. Gardner's death.

After Mr. Gardner died, Jesse R. Gardner, his father, filed a bill of complaint in the Circuit Court for Calvert County in which he sought a declaratory judgment and other relief. The bill alleged the marriage of the Gardners and the subsequent alleged final divorce decree obtained in Indiana in 1955. It recited that subsequent to the divorce the parties acquired real and personal property purportedly as tenants by the entireties; that Melvin Gardner died intestate; and that the father was the sole heir of the decedent. Jesse Gardner moved the court to declare the interests of the decedent and the appellant, as to the real and personal property acquired by the parties after their marriage, and before and after the alleged divorce, as well as property owned by them in partnership. It also requested the court to declare that all real and personal property owned by the decedent be considered part of the decedent's estate and be distributed according to the laws of intestacy in Article 93 of the Annotated Code of Maryland (1969); to require the appellant to account for all partnership assets; and to mandate that the appellant be removed as personal representative of the decedent's estate.

The appellant's answer contended that she and the decedent were married at the time of his death, and that the real estate they acquired after the alleged divorce was held

by them as tenants by the entireties and thereby passed by operation of law to the appellant.

While the case was pending, Melvin Gardner's father, Jesse R. Gardner, died, and Alvin W. Perkins was appointed as executor of Jesse Gardner's estate. The appropriate motion for substitution of party was filed and following an order of court, Alvin W. Perkins became the complainant in this suit and is now the appellee herein.

The matter came on for trial in the Circuit Court for Calvert County, and after hearing the evidence we have recited, the trial judge entered a decree which provided as follows: that the deceased Melvin Gardner and Vonnie Gardner, were divorced and not married but subsequently held themselves out as husband and wife entering into deeds and agreements; that the parties were partners in the business enterprise located in Huntingtown, Maryland, and the estate of Jesse R. Gardner was entitled to an accounting as of the date of the decedent's death and entitled to a distribution of the capital account of the deceased to the estate; that all real and personal property belonging to Melvin Gardner be distributed to the estate of Jesse R. Gardner; and all real property owned by the decedent and Vonnie Gardner as tenants by the entireties be the sole property of the appellant. It is from that decree that this appeal was taken.

The sole question raised by this appeal is whether the divorce decree obtained by Melvin Gardner in Indiana was entitled to full faith and credit in the Maryland courts. Appellant, in her brief and in oral argument, relied primarily on her contention that the Indiana courts did not have domiciliary jurisdiction to grant the divorce decree in this case. As we perceive the matter *sub judice,* there is a preliminary legal question which was not resolved by the trial court.

The first section of Article Four of the Constitution of the United States provides, "Full faith and credit shall be given in each State to the public Acts, Records and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect

thereof." The purpose of the Full Faith and Credit Clause was to promote certainty and uniformity in the rule among the States. Congress, in the exercise of this power granted it by the Constitution, has prescribed the manner in which the records and judicial proceedings of any State may be authenticated. It has defined the effect thereof by enacting that "the said records and judicial proceedings so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law and usage in the Courts of the State from which they may be taken." *Atherton v. Atherton,* 181 U. S. 155, 21 S. Ct. 544 (1901); *Huntington v. Attrill,* 146 U. S. 657, 13 S. Ct. 224 (1892).

Perhaps the greatest difficulty in the delineation of the full faith and credit standards has been the application of the law involving the recognition of foreign divorce decrees. The leading cases in this area are known as *Williams I* and *Williams II.* In *Williams I* (*Williams v. North Carolina,* 317 U. S. 287, 63 S. Ct. 207 (1942)), the Supreme Court held that a divorce granted in Nevada, on a finding that one spouse was domiciled in Nevada, must be respected in North Carolina where Nevada's finding of domicile was not questioned, even though the other spouse had neither been served with process nor appeared in Nevada. In *Williams II (Williams v. North Carolina,* 325 U. S. 226, 65 S. Ct. 1092 (1945)), the Supreme Court had before it the issue whether North Carolina, in the light of the Full Faith and Credit Clause, could refuse to recognize a Nevada decree where it found, contrary to the findings of the Nevada court, that no bona fide domicile was established in Nevada, and that Nevada under these circumstances, lacked jurisdiction to enter a divorce decree. The Supreme Court, in determining the existence of the right to attack collaterally the Nevada divorce decree, said:

> The State of domiciliary origin should not be bound by an unfounded, even if not collusive, recital in the record of a court of another State. As to the truth or existence of a fact, like that of domicil, upon which depends the power to exert judicial authority, a State not a party to the exertion of such judicial authority in another State but seriously affected by it has a

right, when asserting its own unquestioned authority, to ascertain the truth or existence of that crucial fact. *Id.* at 230.

In *Sherrer v. Sherrer,* 334 U. S. 343, 68 S. Ct. 1087 (1948), and *Coe v. Coe,* 334 U. S. 378, 68 S. Ct. 1094 (1948), the Supreme Court narrowed the right to attack collaterally a divorce decree on jurisdictional grounds in the courts of a sister State when there had been participation by the defendant in the divorce proceeding; where the defendant had been accorded procedural due process to contest the jurisdictional issues in the State issuing the divorce decree; or where, as in *Sherrer* and *Coe, supra,* the decree was not susceptible to attack as invalid in the court which granted the divorce.

It is the question of whether the appellant was accorded procedural due process which gives us pause in the case *sub judice.* The Court of Appeals had before it the issue of notice to establish jurisdiction in *Madaio v. Madaio,* 256 Md. 80, 259 A. 2d 524 (1969). It said:

> It is well settled that the courts of this state must give full faith and credit to a divorce decree rendered by a sister state if that state had *in personam* jurisdiction over the parties to the proceedings. *E.g., Staley v. Staley,* 251 Md. 701, 704-05, 248 A. 2d 655 (1968). . . .

> The right to receive notice and to be afforded an opportunity to be heard in any proceeding to which finality is to be accorded is established beyond question in this country. According to the Supreme Court of the United States, "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean,* 234 U. S. 385, 394 (1914). In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U. S. 306 (1950), Mr. Justice Jackson, for the Court, pointed out that:

>> "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality

is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * The notice must be of such nature as reasonably to convey the required information, * * * and it must afford a reasonable time for those interested to make their appearance * * *." 256 Md., at 83-84.

In *Sanders v. Sanders,* 12 Md. App. 441, 278 A. 2d 615 (1971), we said:

It has been stated that "compliance with the statutes on service of process is essential in order to give the court jurisdiction to grant a divorce, unless there is a waiver of service. More obviously, there must be a strict compliance with the statutes and rules on constructive service; compliance is jurisdictional, and if any essential statutory step is omitted, the decree rendered on such service is void. * * * Where a statute requires not only a publication but also that a copy of the petition be mailed by registered mail to the defendant at his or her last known address, the mailing is as much a part of the service as the publication, and where there is a publication but there is no mailing, or the plaintiff causes a notice to be mailed to a false address, the service is void. The mere fact that the defendant has actual notice of the institution of the proceedings against him is not sufficient to give the court jurisdiction where the plaintiff has not complied substantially with the statutes on constructive service." 24 Am.Jur.2d, *Divorce and Separation,* Sec. 286, at 437-38. 12 Md. App., at 447-48.

The Indiana statute which was in effect at the time Melvin Gardner filed his divorce suit provided, in Section 37-12-7, the following requirements for notice to non-resident defendants: Notice could be accomplished by publication in a county

newspaper of general jurisdiction for three successive times, one week apart. The statute provided that the complainant was required to furnish the address of the defendant, if known, so that copies of the notice could be mailed to the defendant, and if the address was unknown, the plaintiff was required to file an affidavit with the court stating this information. We recognize there were unusual difficulties present in this case, as the complainant was deceased and the original documents and testimony were not available because they had been destroyed by a fire. In spite of these difficulties, the appellant was required to establish by a preponderance of the evidence, that the requirement of notice to the appellant had not been complied with and because of a lack of notice the Indiana court had not obtained jurisdiction over the appellant. The appellee offered into evidence exhibits which apparently established that an order of publication had been filed but there is nothing in the record which indicates that the husband furnished his wife's last known address or that a notice of the pending divorce suit was ever sent to the appellant. The wife testified that she never received a notice and that her first knowledge of the divorce suit came when her husband returned to live with her and exhibited the divorce decree. The Maryland law is clear as to the presumptive validity of foreign divorce decrees. According to the case of *Brewster v. Brewster,* 204 Md. 501, 105 A. 2d 232 (1954), a foreign divorce decree is entitled to and must be given presumptive validity and full faith and credit in Maryland unless and until it is attacked and judicially impeached. The burden of proof is on the attacker to establish that the spouse who sought the foreign decree did not acquire a valid domicile in the foreign state or to establish any other facts which would negate the jurisdiction of the foreign court. *Colburn v. Colburn,* 20 Md. App. 346, 316 A. 2d 283 (1974).

It is implicit that the trial judge recognized the importance of the notice requirement as evidenced by his statement contained in his oral opinion, where he said:

Now whether the divorce is good or not, that depends on whether or not Mrs. Gardner had notice

of it; whether he went through the steps to do the things that he was supposed to do in Indiana. And he says and Mrs. Gardner has testified that she had never received any notice, actual notice of this case while it was pending. * * * Somewhere out in Indiana, they decided they had jurisdiction and they obtained jurisdiction, there, and it wasn't any fraud on anybody, it wasn't designed to be done in derogation of any other State's laws.

Now weeding out the question, let's put aside for a minute the question of notice in this case. . . .

Hence, although the trial judge recognized the question, he never reached a conclusion as to whether the husband ever complied with the necessary notice requirements or whether the appellant wife satisfied her burden of proof in attacking the foreign decree. Apparently the trial judge based his decision on the fact that the Indiana court had decided that it had jurisdiction to grant the divorce decree. If the trial judge was not convinced by a preponderance of the evidence that the husband failed to give the required notice, or that the husband was not properly domiciled in the State of Indiana, then the appellant's collateral attack failed and the Indiana decree must be given full faith and credit in Maryland. However, if the trial judge accepted the appellant's testimony, as to the length of Mr. Gardner's stay in Indiana, it becomes evident that Mr. Gardner lived in Indiana for only nine months when the divorce suit was filed. Hence, he did not procure valid domicile to prosecute the suit and the validity of the decree is nugatory. The trial court was not required to accept the testimony of the wife and from the record it is impossible to determine what was the basis for his decision other than the fact that the Indiana court was apparently satisfied that it had jurisdiction. We conclude that this case should be remanded so the trial judge may hold an additional evidentiary hearing if he deems it necessary and

so that he may rule on the result of the collateral attack made on the divorce decree by the appellant.

> *Case remanded without affirmance or reversal for further proceedings; costs to be paid by appellee.*