57 A.3d 1077

**In re MALICHI W.**

**No. 0688, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Dec. 20, 2012.

Kris Golden, Pro Se, for Appellant.

Leslie K. Ridgeway (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: WOODWARD, ZARNOCH, IRMA S. RAKER, (Retired, Specially Assigned), JJ.

ZARNOCH, J.

In this case, we must determine whether a non-parental, non-custodial relative of a child can intervene in the minor's adoption proceeding commenced after the termination of parental rights ("TPR"). Appellant, Kris Golden ("Golden"), who sought intervention in the Circuit Court for Baltimore City, is the maternal cousin of Malichi W. ("Malichi"), who is now eight-years old. The parental rights of Malichi's biological parents were terminated on August 10, 2010. Yolanda W. ("Ms. W.") filed a petition to adopt Malichi on March 24, 2011, which was granted on June 1, 2011. Golden filed two motions, one on April 8 and one on May 31, both entitled "Motion to Intervene and Appeal," in the adoption proceedings. The circuit court, sitting as a juvenile court, denied both motions. Because we find that no law or rule authorizes Golden to intervene in an adoption proceeding after termination of parental rights, we affirm the court's decision.

## FACTS AND LEGAL PROCEEDINGS

Malichi was born on May 3, 2004 in Baltimore City. The juvenile court terminated the parental rights of Malichi's biological parents on August 10, 2010. Malichi's biological

mother consented to the termination on the condition that Malichi be adopted by Ms. W., who was Malichi's pre-adoptive foster mother, and who had custody of the child since June 6, 2006.[1] Malichi's biological father did not object, and thus he consented by operation of law. On March 9, 2011, the Baltimore City Department of Social Services (the "Department"), the child's appointed guardian, consented to Malichi's adoption by Ms. W. Ms. W. then petitioned the court to adopt Malichi on March 24, 2011. The following day, the court appointed an attorney to represent Malichi.

On April 8, Golden filed a motion in Malichi's adoption proceedings captioned "Motion to Intervene and Appeal." She wanted to be considered as an adoptive parent for Malichi. The juvenile court denied the motion on April 12, in a one-line order, stating that it lacked good cause. Golden did not appeal this decision. On May 31, 2011, Golden filed a second motion with the same caption as her first.[2] On June 1, 2011, the juvenile court granted Ms. W's petition for adoption of Malichi. The court then denied Golden's motion on June 10, 2011 in a brief order, finding that there was a lack of good cause and that the issue was moot because "the child was adopted on 6/1/11." Golden filed this appeal.

## QUESTION PRESENTED

We review the following question: [3]

---

1. Malichi had previously been determined to be a child in need of assistance (CINA) although the record is unclear regarding the date of the court's order. Malichi's status as a CINA was terminated when adoption was ordered.

2. Golden was not entitled to a hearing on her motions under Md. R. 2–311 because she did not request one.

3. We have formulated this question from a review of Golden's brief. Under "Issues Presented," Golden states, in part, "Kris Golden was not afforded proper consideration in her attempt to adopt Malichi W. so that he could remain with his biological family." Because Golden was not a proper party to the adoption proceeding, she can only appeal the denial of her motion to intervene. The denial of a motion to intervene

Did the court legally err in denying Golden's second motion to intervene? [4]

For the following reasons, we find no error and affirm the circuit court's denial of Golden's motion to intervene.

## DISCUSSION

■■■■ In this case, the key issue is whether a non-parental, non-custodial relative of a child is authorized to intervene in an adoption proceeding after termination of parental rights. Because this is a purely legal issue involving interpretation of the Maryland Code and the Maryland Rules of Procedure, we review the juvenile court's decision under a *de novo* standard.[5] *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78 (2004).

Golden argues that the juvenile court erred in denying her motion to intervene and appeal because she was Malichi's maternal cousin, and she had an interest in adopting him. She contends that the court should have considered her as a potential adoptive parent because she is a biological family member. The Department responds that the juvenile court properly denied Golden's motion because no statute or rule affords a person in Golden's situation either a right or an

---

is an appealable final order. *Hiyab, Inc. v. Ocean Petroleum, LLC*, 183 Md.App. 1, 9, 959 A.2d 808 (2008).

**4.** Golden did not appeal the denial of her first motion and ordinarily, she would not be permitted to file the same motion more than 30 days after the denial of her first motion. Md. Rule 2–535. However, appellee Department has not raised an objection. In addition, the juvenile court entertained the second motion by finding lack of good cause. Thus, we will address whether Golden had a right to intervene. Because we affirm the circuit court's decision that she could not intervene, we need not decide the issue of mootness.

**5.** This review is different than our consideration of a circuit court's denial of a motion to intervene under Md. Rule 2–214. There, we employ an abuse of discretion standard when the circuit court denies the motion as untimely or when permissive intervention is rejected. *See Md.–National Capital Park & Planning Comm'n v. Town of Washington Grove, Md.*, 408 Md. 37, 65 n. 20, 968 A.2d 552 (2009). Denials of a motion to intervene as a right are reviewed under a *de novo* standard. *Id.*

opportunity to intervene in an adoption proceeding after parental rights have been terminated.

We agree with the Department. In reaching this conclusion, we review the Maryland Code provisions and Maryland Rules of Procedure that could potentially relate to this case: Title 5, Subtitle 3 of the Family Law Article ("FL") of the Md.Code (1984, 2006 Repl.Vol.); Title 9 of the Maryland Rules; Md. Rule 2–214; and Title 11 of the Maryland Rules, particularly with respect to its interaction with Title 3, Subtitle 8 of the Courts and Judicial Proceedings Article ("CJP") of the Md.Code (1973, 2006 Repl.Vol.).

## I. Family Law Article, Title 5, Subtitle 3

■ Title 5, Subtitle 3 of the FL Article which governs adoptions, and more specifically Part IV, which applies to adoptions after termination of parental rights, makes no mention of a right to intervene in an adoption proceeding. *See* FL §§ 5–301 *et seq.*

Under FL § 5–345(a), "[a]ny adult" may petition a juvenile court for an adoption of the child post-TPR. However, the petitioner must include in his or her filing all written consents required by FL § 5–350(a).[6] Because Ms. W. filed the consent of Malichi's guardian, the Department, Golden could not. This fact poses an insurmountable barrier to the relief she seeks—consideration as an adoptive parent. However, even if we were to assume that Golden's goal was to overturn Ms. W.'s adoption of Malichi, no mechanism exists for her intervention in a post-TPR adoption.[7]

---

**6.** Section 5–350(a) states:

A juvenile court may enter an order for a child's adoption under this Part IV of this subtitle only if:
(1) for an individual under the age of 18 years, the individual's guardian consents; and
(2) for an individual who is at least 10 years old, the individual consents.

**7.** Golden has not filed a petition to invalidate the adoption. Under FL § 5–353, if such a petition alleges a jurisdictional or procedural defect and is filed more than one year after entry of the adoption order a

## II. Title 9 of the Maryland Rules

The Maryland Rules that concern adoption and guardianship cases, *viz.*, those in Title 9, do not give Golden the right to intervene in this adoption. Under Md. Rule 9–107(a), "[a]ny person having a right to participate in a proceeding for adoption or guardianship may file a notice of objection to the adoption or guardianship." [8] Section (b)(1) restricts when a person can file this objection, stating that the objector must file within 30 days after "the show cause order is served." Md. Rule 9–107(b)(1). A show cause order must include a "pre-captioned notice of objection form." Md. Rule 9–105(c)(3). Because a person must file his or her objection within 30 days after the court sends a show cause order, it would seem that the only persons permitted to object are those who receive a show cause order.

However, unlike other types of adoptions, in a post-TPR adoption proceeding, there is no requirement for issuance of a show cause order. Md. Rule 9–105(a).[9] Rather, the clerk of

---

juvenile court must dismiss the petition. In light of our conclusion that Golden could not intervene in the adoption proceeding, we need not consider the impact of § 5–353 on her contentions.

**8.** The history of Rule 9–107(a) and its forbearers make it clear that if "intervention" exists in an adoption/guardianship proceeding, it is within the confines of this Rule. When this provision was embodied in former Rule 1176, it provided that if a person had "a right to contest a proceeding for adoption, or guardianship" he or she could file "a petition to intervene as a defendant in the proceeding." This "intervention" requirement was retained in former Rule D76. In the 1980s, this rule was amended to substitute "a notice of objection" for "a petition to intervene" and the "right to notice of a proceeding" was substituted for a "right to contest a proceeding." Finally, this latter provision became a "right to participate in a proceeding." Regardless of its verbage, the Rule has keyed intervention/objection to a pre-existing right to be part of the proceeding.

**9.** In a guardianship case, the court provides a show cause order to each of the child's living parents who has not consented to the guardianship, each living parent's last attorney of record in the CINA case, and the child's last attorney of record in the CINA case. FL § 5–316. In an adoption without termination of parental rights, the court must send a show cause order to each of the child's living parents who has not consented to the adoption, each living parent's last attorney of record in

court sends notice to the local department of social services and the child's last attorney of record in the guardianship case. FL § 5–346. Nevertheless, Rule 9–105 contains blank Notice of Objection forms which apply to five different types of adoptions, including "a Public Agency Adoption after TPR." [10] Thus, we shall assume that Rule 9–107(a) applies in a post-TPR adoption case. Regardless, the rule still requires that the objectors have "a right to participate" in the adoption proceeding.

Under FL § 5–350, for a minor, the guardian must consent to the adoption and if the child is at least 10 years of age, he or she must also consent. These are the persons entitled to notice under FL § 5–346. They are the participants and potential objectors. Golden does not qualify as an intervenor under Rule 9–107(a). [11] The persons who have a "right to participate" in the proceeding under this rule and a right to object to the proposed adoption are very limited. *See* 2 Am.Jur.2d *Adoptions* (2004) at § 121 ("The parties to adoption cases are strictly limited to those with legal rights at stake.") Because Golden is not within this class of persons with a right to participate in the adoption proceeding, she cannot rely on the Title 9 rules as a basis for intervention.

### III.  Maryland Rule 2–214

■ Md. Rule 2–214 governs intervention in certain civil cases but does not apply to adoption proceedings. Md. Rule 1–101(b) states that Title 2 "applies to civil matters in the circuit courts, except for Juvenile Causes under Title 11 of these Rules and except as otherwise specifically provided or

---

the CINA case, and the child's last attorney of record in the CINA case. FL § 5–334.

**10.** This term may be a bit of a misnomer because Part IV of Title 5, Subtitle 3 of the FL Art. applies to a post-TPR adoption by an adult petitioner, not to an adoption by a public agency.

**11.** The Notice of Objection form included in Rule 9–105 confirms this reading of Rule 9–107(a). It lists the only potential objector in this type of case as "the person to be adopted."

necessarily implied." It is necessarily implied that intervention under Title 2 is inapplicable to adoption proceedings because Title 9 has its own rules for "intervening" in adoption proceedings. Specifically, as discussed above, Md. Rule 9–107 allows for a person to object to an adoption in limited circumstances. Providing for an "objection" to the adoption proceeding necessarily implies that it is the exclusive way that one can intervene in such a proceeding. Thus, Md. R. 2–214 does not apply to adoption proceedings.

## IV. Title 11 of the Maryland Rules

■ Finally, Md. Rule 11–122(b),[12] a rule concerning non-parental intervention, does not apply to post-TPR adoption proceedings. Rule 11–122(b) allows non-parental intervention at the discretion of the juvenile court, but for "dispositional" purposes only. The Rule does not specifically state what "dispositional purposes" means. However, it is apparent that the provisions of the Maryland Code concerning "juvenile causes" are in *pari materia* with the Title 11 Rules;[13] and the statutory provisions shed light on the meaning of "dispositional purposes." In CJP §§ 3–801 *et seq.*, which governs CINA proceedings, the term "[d]ispositional hearing" means a hearing to determine:

(1) Whether a child is in need of assistance; and

---

**12.** Md. Rule 11–122(b) provides:

Upon timely application, any person, other than a parent, seeking custody or guardianship of the respondent child may be permitted to intervene *for dispositional purposes* only, including the filing of a petition to review, modify or vacate a disposition order. Any person permitted to intervene pursuant to this section shall not be deemed a "party" for the purposes of Rule 11–106, and for the purposes of Rule 11–105, counsel for the intervenor, upon request, shall only be entitled to be furnished copies of such studies and reports as directly relate to the intervenor's petition for custody or guardianship of the respondent child.

(Emphasis added).

**13.** We note that Rule 11–501(a) which speaks to TPR and related adoptions in the juvenile court contains an erroneous citation to CJP § 3–804(a)(2). That paragraph is no longer found in § 3–804.

(2) If so, the nature of the court's intervention to protect the child's health, safety and well being.

CJP § 3–801(m).[14]

Section 3–819(b)(1) of the CJP Article describes the possible judicial "interventions":

In making a disposition on a CINA petition under this subtitle, the court shall:

(i) Find that the child is not in need of assistance and, except as provided in subsection (e) of this section, dismiss the case;

(ii) Hold in abeyance a finding on whether a child with a developmental disability or a mental illness is a child in need of assistance and:

1. Order the local department to assess or reassess the family's and child's eligibility for placement of the child in accordance with a voluntary placement agreement under § 5–525(b)(1)(i) of the Family Law Article;

2. Order the local department to report back to the court in writing within 30 days unless the court extends the time period for good cause shown;

3. If the local department does not find the child eligible for placement in accordance with a voluntary placement agreement, hold a hearing to determine whether the family and child are eligible for placement of the child in accordance with a voluntary placement agreement; and

4. After the hearing:

A. Find that the child is not in need of assistance and order the local department to offer to place the child in accordance with a voluntary placement agreement under § 5–525(b)(1)(i) of the Family Law Article;

---

**14.** In CJP §§ 3–8A–01 *et seq.*, which applies to children other than CINAs and adults, a [d]ispositional hearing" is defined as a hearing to determine:

(1) Whether a child needs or requires guidance, treatment, or rehabilitation; and if so

(2) The nature of the guidance, treatment, or rehabilitation.

B.  Find that the child is in need of assistance;  or

C.  Dismiss the case;  or

(iii) Subject to paragraph (2) of this subsection, find that the child is in need of assistance and:

1.  Not change the child's custody status;  or

2.  Commit the child on terms the court considers appropriate to the custody of:

A.  A parent;

B.  Subject to § 3–819.2 of this subtitle, a relative, or other individual;  or

C.  A local department, the Department of Health and Mental Hygiene, or both, including designation of the type of facility where the child is to be placed.

Paragraph (b)(3) states:  "Unless good cause is shown, a court shall give priority to the child's relatives over nonrelatives when committing the child to the custody of an individual rather than a parent."  Subsection (c) provides:

In addition to any action under subsection (b)(1)(iii) of this section, the court may:

(1)(i) Place a child under the protective supervision of the local department on terms the court considers appropriate;

(ii) Grant limited guardianship to the department or an individual or both for specific purposes including medical and educational purposes or for other appropriate services if a parent is unavailable, unwilling, or unable to consent to services that are in the best interest of the child;  or

(iii) Order the child and the child's parent, guardian, or custodian to participate in rehabilitative services that are in the best interest of the child and family;  and

(2) Determine custody, visitation, support, or paternity of a child in accordance with § 3–803(b) of this subtitle.

Finally, CJP § 3–819.2(b) states that "the court may grant custody and guardianship to a relative or nonrelative under this subtitle."

This statute makes it clear that the term "dispositional purposes" in Rule 11–122(b) applies to proceedings that pre-

cede an adoption that follows a termination of parental rights. Moreover, the specificity and exclusivity of Rule 11–122(b) create the negative implication that no right of intervention exists beyond the dispositional stage—here, an adoption following termination of parental rights.[15] The rationale for such a construction is readily apparent. In *Palmisano v. Baltimore County*, 249 Md. 94, 103, 238 A.2d 251 (1968), the Court of Appeals noted the "need to surround" the final adoption decree "with a high degree of certainty" and that "anything which would undermine public confidence in adoption proceedings must be read by the courts in the gravest light."

With a review of the potentially applicable law, we find no statute or rule allows intervention in an adoption after termination of parental rights. Thus, Golden had no right to intervene in the adoption. She was not a parent or guardian. Ms. W. had already filed her adoption petition. Malichi's biological mother had consented to the termination of her parental rights on the condition that Malichi be adopted by Ms. W., not Golden. The Department of Social Services, as guardian, had already consented to Ms. W.'s adoption petition. After these steps were taken, the only parties to the adoption proceeding were Ms. W. and Malichi. We find no legal error from the juvenile court's decision, and affirm the denial of Golden's motion to intervene.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY, SITTING AS A JUVENILE COURT, AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

**15.** With great force, Golden argues that she should be considered for adoption because she is a relative of Malichi. This argument would carry greater weight if Golden had sought custody before adoption, where State law accords a preference to relatives over non-relatives for custodial purposes. *See e.g.*, CJP §§ 3–815(c)(5), 3–819(b)(3), 3–823(e)(1)(i)(2), and FL § 5–525(f)(2). No such priority appears in the post-TPR adoption provisions. It would appear that Golden may not have been able to seek custody at that time because she was a minor. However, this is no reason to depart from the statutory provisions and rules to grant a right to participate in post-TPR adoption proceedings.