750 A.2d 729

Kaven T. MILES

v.

Francine STOVALL.

Kaven T. Miles

v.

State of Maryland.

**Nos. 978 and 1559, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

May 1, 2000.

72

David E. Fox, Washington, DC, for appellant.

Mary C. Murphy, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellees.

Argued before EYLER, THIEME and SONNER, JJ.

SONNER, Judge.

This consolidated appeal arises from two cases heard in the Circuit Court for Baltimore City: a civil paternity suit and a criminal non-support of minor child suit. The appellant in both cases, Kaven T. Miles, was married to Francine Stovall, appellee, when Stovall gave birth to Brandon Miles in January 1984. Miles and Stovall have never lived together and divorced in May 1999. In the paternity case, Stovall requested a determination of paternity, custody, child support, and insurance coverage. Miles requested blood tests to rebut the

presumption that he was Brandon's father. The court denied the request for blood tests and dismissed the case without prejudice, based on the presumption that Miles is Brandon's father. In the criminal suit, the State of Maryland, appellee, prosecuted appellant for criminal non-support of a minor child. The court found Miles to be $26,638 in arrears for child support and sentenced him to three years incarceration, all suspended, and five years probation. Appellant now appeals both judgments and presents this Court with the following issues:

1. Did the trial court err in not giving full faith and credit to a judicial ruling from another jurisdiction?

2. In a paternity action, upon the request of the putative father, did the trial court err in denying the defendant a blood test to rebut the presumption that he is the child's father?

3. Did the trial court err in setting child support as well as arrears without a finding of actual income, potential income, past income, or voluntary impoverishment?

4. Is the State's claim barred by laches?

5. Did the State have standing to prosecute Miles?

For the reasons discussed below, we find that the court erroneously applied an irrebuttable presumption of paternity, and we therefore reverse both judgments of the lower court.

Miles and Stovall married on August 4, 1983, in Norfolk, Virginia. Stovall gave birth to Brandon Miles on January 28, 1984, approximately five and one-half months after the wedding. At the time of their marriage, Miles was serving in the United States Navy and was stationed in Norfolk, Virginia. He now lives in Washington, D.C. Stovall lives in Baltimore, Maryland.

On October 10, 1984, the State of Maryland charged Miles with criminal non-support of a minor child. A warrant for

Miles's arrest was issued on December 17, 1984, but was not served until March 26, 1999.[1]

In January 1998, Stovall filed a paternity petition, which stated, "[t]hat Francine Stovall was unmarried at the time the child was conceived, that the paternity of the child has not been determined by any court, and that Kaven Tyrone Miles is in fact the child's father." Miles failed to appear at the hearing, and a paternity warrant for his arrest was signed on September 14, 1998. Both the paternity warrant and the non-support warrant were served on March 26, 1999.

On May 18, 1999, the Superior Court of the District of Columbia granted Miles an absolute divorce on the ground of separation without cohabitation for one year. The court made several findings of fact, including that there were no children born to the parties. Although Miles personally served Stovall with divorce papers in January 1999, Stovall did not appear or defend the divorce action and did not file an appeal.

The paternity hearing was held on May 25, 1999, and Miles appeared *pro se*. Miles requested blood tests, but the court denied the request because a child born during a marriage is presumed to be legitimate, and rebutting that presumption would have to occur in a different proceeding in a different court. The trial judge dismissed the case without prejudice.

The criminal non-support hearing was held on August 4, 1999, in front of the same trial judge as held the paternity hearing. Miles appeared with counsel and filed a motion for a stay of proceedings because an appeal had been filed in the paternity proceeding. The court denied the motion and, again, denied the request for blood tests. Miles's counsel also argued that full faith and credit must be given the District of Columbia divorce decree's finding that there were no children born to the parties. The court stated that it did not remember whether, during the paternity proceeding, Miles had at-

---

1. The warrant states that Miles violated "Article 27, Section 88B dating from March 1, 1984." We note that Article 27, § 88B was repealed by Acts 1984, ch. 296, § 1, effective October 1, 1984, and was codified in Family Law § 10–203 by Acts 1984, ch. 296, § 2.

tempted to tell the court that there was a divorce decree stating there were no children born. Miles's counsel proffered that the couple had spent only one weekend together; however, Stovall's counsel proffered that the couple had a three-year relationship prior to the marriage and decided to marry in August 1983 because Stovall was pregnant with Miles's child. Stovall testified that Brandon knew nothing of the proceedings and does not know Miles. She stated that she plans to tell him that his father wants to see him. Throughout the paternity proceeding, as well as the criminal proceeding, Miles repeatedly complained that Stovall never let him see Brandon and that, if he is in fact Brandon's father, he will help support the child. The court found Miles guilty of criminal non-support and calculated child support from the date the first warrant was issued on December 17, 1984.

Appellant first argues that full faith and credit should have been given to the District of Columbia divorce decree's finding that there were no children born of the marriage. On the other hand, the State of Maryland argues that full faith and credit must be given only to actual judgments, not factual assertions. The State further argues that the District of Columbia court had no personal jurisdiction over Stovall, and that a parent, through her inaction, cannot jeopardize a minor child's right to support. The State relies on *Komorous v. Komorous,* 56 Md.App. 326, 467 A.2d 1039 (1983), and *Lohman v. Lohman,* 331 Md. 113, 626 A.2d 384 (1993), for the proposition that Maryland may still protect the resident spouse's right to alimony or support.

The District of Columbia divorce decree states, in pertinent part:

This matter was heard on the 18th day of May, 1999. Upon the complaint filed herein, and the evidence adduced, the court makes the following:

### FINDINGS OF FACT

1. The plaintiff is and has been a bona fide resident of the District of Columbia for more than six (6) months next preceding the filing of the complaint herein.

2. The parties hereto were lawfully married to each other on August 4, 1983, in Norfolk, Virginia.

3. *No children were born to the parties.*

4. Since 1983 the parties hereto have lived continuously separate and apart from each other without cohabitation.

5. There are no property rights to be adjudicated between the parties.

6. There is no reasonable prospect of a reconciliation of this marriage.

## CONCLUSION OF LAW

Based upon the foregoing findings of Fact, the court concludes as a matter of law that the plaintiff is entitled to a Judgment of Absolute Divorce from the defendant on the ground of separation without cohabitation for one year next preceding the commencement of this action.

## JUDGMENT

WHEREFORE, it is by this Court this 18 th day of May, 1999. ORDERED, ADJUDGED AND DECREED

1. That the plaintiff, Kaven Miles, be and he is hereby awarded an Absolute Divorce from the defendant Francine Stovall, on the ground of separation without cohabitation for one year next preceding the commencement of this action, PROVIDED, HOWEVER, that this Judgment shall not become effective to dissolve the bounds of matrimony until the time allowed for taking an appeal has expired or until the final disposition for any appeal so taken.

## NOTICE

The parties, pursuant to the provisions of Superior Court General Family Rule D(e), may obtain a review of this matter by a Judge of the Superior Court of the District of

Columbia by filing a written motion complying with this rule within (10) days of entry of this Judgment.

(Emphasis added.)

Article Four of the *United States Constitution* states, "Full faith and credit shall be given in each State to the public Acts, Records and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof." U.S. CONST. art IV. The purpose of the Full Faith and Credit Clause is to promote uniformity among states. *Gardner v. Perkins*, 41 Md.App. 632, 636, 398 A.2d 480 (1979).

A sister state's judicial findings of fact, as well as conclusions of law, must be afforded full faith and credit in Maryland, unless and until judicially impeached. *Dackman v. Dackman*, 252 Md. 331, 336, 250 A.2d 60 (1969), *reversed on other grounds, Eastgate Assoc. v. Apper*, 276 Md. 698, 350 A.2d 661 (1976); *see also Brewster v. Brewster*, 204 Md. 501, 504–05, 105 A.2d 232 (1954). The broad language of the Full Faith and Credit Clause states that "[f]ull faith and credit shall be given in each State to the *public Acts, Records and Judicial Proceedings* of every other State." U.S. CONST. art IV. This plain language indicates that the acts, records, and proceedings themselves must be afforded full faith and credit, not just the actual judgments. Therefore, the District of Columbia divorce decree's finding of fact that there were no children born to the parties must be recognized.

However, that is not the end of the inquiry. The Supreme Court has allowed states to protect their domiciliaries by not recognizing portions of a foreign divorce decree that purport to cut off a personal claim or obligation. *Vanderbilt v. Vanderbilt*, 354 U.S. 416, 418–19, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957). The effect "is to make the divorce divisible—to give effect to the [ex parte divorce] decree insofar as it affects marital status and to make it ineffective on the issue of alimony." *Estin v. Estin*, 334 U.S. 541, 549, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948). Maryland first applied this theory of a

"divisible" divorce decree in *Dackman v. Dackman,* 252 Md. 331, 250 A.2d 60 (1969), and *Altman v. Altman,* 282 Md. 483, 386 A.2d 766 (1978), in which the Court of Appeals permitted a claimant to recover alimony, despite a foreign divorce decree that made no provision for alimony. In *Altman,* the Court of Appeals emphasized the predominant interest in safeguarding the well-being of Maryland residents:

> [T]here is absolutely no justification for permitting such a [foreign divorce] decree to endanger appellee's material well-being by terminating her support rights without any consideration having been given to the scope of her needs.
>
> Maryland's predominant interest in safeguarding the economic security of its domiciliaries who suffer loss of financial support at the hands of an itinerant spouse, requires that aggrieved residents be afforded a remedy even where the marriage has previously been brought to an end by an out-of-state decree.

*Altman,* 282 Md. at 493, 386 A.2d 766. Since *Dackman* and *Altman,*

> Maryland case law has followed a policy trend toward exercising its power to protect the domiciliary spouse. The policies declared by the Court of Appeals justify our extending this trend to protect the right to alimony *pendente lite* following an *ex parte* foreign decree.

\* \* \*

> A foreign decree of divorce may end the marital relationship, but does not end Maryland's paramount interest in the domiciliary spouse's economic well-being.

*Komorous v. Komorous,* 56 Md.App. 326, 331, 337, 467 A.2d 1039 (1983). In 1984, the Maryland legislature enacted Family Law §§ 8–212 and 11–105, which specifically address the powers of Maryland courts after a divorce or annulment has been granted by a court in a foreign jurisdiction.[2]

---

**2.** Section 8–212, titled "Exercise of powers after foreign divorce or annulment," states:

■ It cannot be disputed that Maryland has a paramount interest in protecting the welfare and economic well-being of its minor residents. In addition, parents are jointly and severally responsible for a minor child's support and welfare. MD.CODE, FAM. LAW § 5–203(b). We therefore hold that this foreign divorce decree's finding that there were no children born to the parties may not be used to cut off the minor child's right to support and, as such, is a "divisible" portion of the divorce decree. As such, the lower court did not err in declining to give full faith and credit to the District of Columbia divorce decree's finding that no children were born to the parties.

■ The State's other contention, that the District of Columbia court lacked personal jurisdiction over Stovall, is raised for the first time on appeal. Therefore, the issue of whether the divorce decree itself is invalid for lack of jurisdiction is not preserved for our review, as Stovall has waived her right to attack the divorce decree collaterally. Md. Rule 8–131(a)(2000). Our ruling does not, of course, preclude Stovall from raising the issue upon remand.

■■ Appellant next argues that the lower court erred in denying him blood tests to rebut the presumption of paternity. Paternity may be established under either the Family Law

---

If an annulment or a divorce has been granted by a court in a foreign jurisdiction, a court in this State may exercise the powers under this subtitle if:
(1) 1 of the parties was domiciled in this State when the foreign proceeding was commenced; and
(2) the court in the other jurisdiction lacked or did not exercise personal jurisdiction over the party domiciled in this State or jurisdiction over the property at issue.
MD.CODE (1999 Repl.Vol.), FAM. LAW § 8–212. Section 11–105, titled "Same [Award]—Following decree by another jurisdiction," states:
If an annulment or a limited or absolute divorce has been granted by a court in another jurisdiction, a court in this State may award alimony to either party if:
(1) the court in the other jurisdiction lacked or did not exercise personal jurisdiction over the party seeking alimony; and
(2) the party seeking alimony was domiciled in this State at least 1 year before the annulment or divorce was granted.
MD.CODE (1999 Repl.Vol.), FAM. LAW § 8–212.

Article or the Estates and Trusts Article of the Maryland Code. *Toft v. State of Nevada*, 108 Md.App. 206, 224, 671 A.2d 99 (1996); *Turner v. Whisted*, 327 Md. 106, 112–13, 607 A.2d 935 (1992). In this case, Miles is presumed to be Brandon's father under the Estates and Trusts Article, but not the Family Law Article. Family Law § 5–1027(c) states, "There is a rebuttable presumption that the child is the legitimate child of the man to whom its mother was married *at the time of conception.*" MD.CODE (1999), FAM. LAW § 5–1027(c) (emphasis added). Stovall's paternity petition concedes that she was unmarried at the time Brandon was conceived. Therefore, under the Family Law Article, Miles is not presumed to be Brandon's father, even though he was married to Stovall at the time Brandon was born.

However, Estates and Trusts § 1–206 states, "A child *born or conceived* during a marriage is presumed to be the legitimate child of both spouses...." MD.CODE (1991), EST. & TRUSTS § 1–206 (emphasis added). In this case, Brandon was born during the marriage and therefore, under the Estates and Trusts Article, Miles is presumed to be Brandon's father.

Reading these two statutes in a way that advances the legislative policies involved [3], and construing them as if they were not inconsistent with one another, as we must, *Taxiera v.*

---

**3.** The purpose of the Family Law Article's paternity proceedings is:

(1) to promote the general welfare and best interests of children born out of wedlock by securing for them, as nearly as practicable, the same rights to support, care, and education as children born in wedlock;

(2) to impose on the mothers and fathers of children born out of wedlock the basic obligations and responsibilities of parenthood; and

(3) to simplify the procedures for determining paternity, custody, guardianship, and responsibility for the support of children born out of wedlock.

MD CODE (1999), FAM. LAW § 5–1002(b). The purpose of the estates of decedents law is "to simplify the administration of estates, to reduce the expenses of administration, to clarify the law governing estates of decedents, and to eliminate any provisions of prior law which are archaic, often meaningless under modern procedure and no longer useful...." MD.CODE (1991), EST. & TRUSTS § 1–105(a).

*Malkus,* 320 Md. 471, 480–81, 578 A.2d 761 (1990), we find that the lower court correctly presumed Miles to be Brandon's father, pursuant to the Estates and Trusts Article. However, that presumption is rebuttable. MD.CODE (1991), EST. & TRUSTS § 1–105. "A motion for blood tests made under the Estates & Trusts Article is best analyzed as a request for a physical examination under Maryland Rule 2–423,[4] and the court has discretion to grant or deny the blood tests." *Turner,* 327 Md. at 113, 607 A.2d 935; *see also Monroe v. Monroe,* 329 Md. 758, 767, 621 A.2d 898 (1993).

 A review of the paternity proceedings transcript indicates that the lower court erroneously believed that, as a matter of law, blood tests could not be used to rebut a presumption of paternity in a paternity proceeding. Although the court stated the presumption was rebuttable, it actually imposed an irrebuttable presumption of paternity by ruling that rebuttal could not occur in "child support court." For instance, the court stated, "In this court, you are presumed to be the father of that child, which means you owe child support. You can file *in some other court* to try to [rebut the presumption]."[5] Under Maryland Rule 2–423, the court should have

---

**4.** Maryland Rule 2–423 states, in pertinent part:
When the mental or physical condition or characteristic of a party or of a person in the custody or under the legal control of a party is in controversy, the court may order the party to submit to a mental or physical examination.... The order may be entered only on motion for good cause shown and upon notice to the person to be examined and to all parties.
Md. Rule 2–423 (2000).

**5.** Other examples include:
THE COURT: There is a presumption, Sir, that you would have to go to court ... and prove that you were not [the father]. It's a very difficult presumption to rebut, but you would have to, *in a different proceeding,* do that.
* * *
THE COURT: He is presumed to be the father. If he wants to fight it, *he has to go to court in another channel* and file to have that overturned.
[ASSISTANT STATE'S ATTORNEY]: That should have been done in your divorce.
THE COURT: That is right.

exercised its discretion in evaluating whether Miles showed good cause to order blood tests, as well as considered the best interests of the child. *Monroe,* 329 Md. at 767, 621 A.2d 898; *Turner,* 327 Md. at 115–17, 607 A.2d 935; *see also McDaniels v. Carlson,* 108 Wash.2d 299, 738 P.2d 254, 261 (1987)(where child is presumed legitimate, best interests of the child should be considered before ordering blood tests)(cited with approval in *Turner,* 327 Md. at 116, 607 A.2d 935). Therefore, we find that the court erred in not exercising its discretion and in automatically setting child support based on an irrebuttable presumption of paternity, and we reverse the lower court on this issue.

Having held that the lower court erred in denying Miles a blood test to rebut the presumption of paternity, we need not address appellant's argument that the court erred in calculating the amount of child support owed by Miles. In addition, appellant's arguments regarding laches and standing are not properly before us, as they are raised for the first time on appeal. Md. Rule 8–131(a)(2000).

For the foregoing reasons, the judgments of the lower court in the paternity proceeding and criminal non-support proceeding are reversed.

**JUDGMENTS REVERSED. CASES REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLEES FRANCINE STOVALL AND BALTIMORE CITY.**

---

\* \* \*

THE COURT: ... You are the father, which means you owe child support *until a court in another venue says you are not,* and it's very difficult.