REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 313

September Term, 2014

IN RE: KATERINE L. AND ALEX F.

Kehoe,
Arthur,
Leahy

JJ.

Opinion by Leahy, J.

Filed: December 3, 2014

Appellant, Mr. B., and Appellee, Ms. B. ("Mother"), were married on August 30, 2000. Although the couple parted ways soon thereafter, neither party sought a divorce prior to the current controversy. In the years since they were married, Mother has given birth to five children; four of those during the time the couple was estranged. Nonetheless, based on the "marital presumption" in Maryland Code (1974, 2001 Repl. Vol.), Estates and Trusts Article ("ET") § 1-206, Mr. B. remains the legal father of the children born during his marriage. Mr. B. has had no contact or relationship with the children; however, when Appellee, the Montgomery County Department of Health and Human Services ("the Department"), began Child in Need of Assistance ("CINA") proceedings involving the four youngest children, Mr. B. was notified as a party. The Circuit Court for Montgomery County, sitting as the juvenile court, issued an order denying the Department's request for genetic testing to disestablish paternity in regards to minor children Katerine L. and Alex F. following a best interests hearing conducted on October 4, 2013. At a review hearing held on February 21, 2014, Mr. B. requested that the court revisit its earlier decision denying genetic testing in order to divest himself of legal paternity of Katerine L. and Alex F. The court denied Mr. B.'s request. He presents three issues for review:

I. Did the circuit court err in determining that the availability of another "putative father" for testing was required to find that genetic testing was in the best interests of the child, and thus, abuse its discretion in determining that the lack of an available putative father precluded testing in this case?

II. Was Appellant improperly denied the right to counsel at the October 4, 2013, best interests and good cause hearing?

III.     Did the circuit court err by *sua sponte* rescinding its earlier order to conduct genetic testing?

For the reasons set forth below, we do not reach Appellant's questions because the circuit court's order was not final and appealable, and the appeal must be dismissed.

## BACKGROUND

Mother has five children: Edgar B., Alex F., Adriana L., Katerine L., and Eric B. All five of the children were born during the marriage of Mother and Mr. B.   The eldest, Edgar B., born August 31, 2000, is the only child not conceived during the marriage. Since birth, the children have resided with Mother and have had little to no contact with Mr. B.

On June 18, 2013, the Department received a report that Mother was neglecting her five children.   A second report, made June 21, 2013, alleged that one of the children had been sexually abused by an older sibling.   During the subsequent Department assessment on June 24, 2013, Mother notified a social worker that she was being evicted and was in need of housing for herself and the children. At that time, Edgar B. was staying with a relative and Adrianna L. was living with a family friend.   On June 26, 2013, after Mother was admitted to a hospital emergency department for stating that she was suicidal, the Department removed the remaining children from Mother's custody.

Katerine L., Alex F., and Eric B. were placed in shelter care, and on the following day, June 27, 2013, the Department initiated CINA proceedings.   Adrianna L. was placed in shelter care on July 10, 2013 and was added to the CINA proceedings.   Edgar B. is not

2

part of the CINA case.

The Circuit Court for Montgomery County, sitting as the juvenile court, held an adjudication and disposition hearing on July 26, 2013. Based on an agreed statement of facts, the court found the four children to be CINA. The court inquired as to the whereabouts and availability of Mr. B. Mother testified that Mr. B. is not the biological father of any of her children and that she had not seen him over the last ten years.

Mr. B. did not participate in the adjudication and disposition hearing. However, two other putative fathers did respond. Putative father, Mr. F., was present through counsel for Adrianna L. Mr. Abdul K., putative father of Eric B., did not appear at the hearing, but called the Office of the Public Defender to request counsel and spoke with a social worker regarding the proceedings. No one appeared on behalf of Katerine L. and Alex F. other than Mother.

The court acknowledged that there was a dispute about the biological parentage of all four children, but explained that before ordering any genetic testing, the court would have to hold a hearing to determine whether it is in the best interests of the children to set aside parentage. The court made the following statement about the best interests hearing:

> The outcome will be that unless there is testimony that satisfies the requirement that it be in each child's best interest . . . it'll stand as it is by the legal presumption, which is that [Mr. B.] is the father. And I'll say this, if there's no other potential father, [Mr. B.] will remain the father because . . . there's nobody to undo the presumption with, I guess is the way to say it.

**Best Interests Hearing: October 4, 2013**

3

On October 4, 2013, the circuit court held a hearing to determine if genetic testing was in the best interest of each of the children. Having been notified of the proceedings, Mr. B. attended the hearing without the assistance of counsel.[1] Following Mr. B.'s arrival, the court took a brief recess to allow an interpreter to arrive and assist Mr. B. Although the transcript indicates a break in recording during that time, Mr. B. engaged in a discussion with the court about proceeding without counsel, as the circuit court recounted in the subsequent hearing on February 21, 2014:

> Mr. B[.] understood what we were doing because we had a long discussion about what was happening. And he was offered the opportunity to have counsel, which he declined, and wanted to proceed. He appeared for the parentage testing part of this process, and he's not entitled to counsel. But I offered him the opportunity to go and get it, and he refused.

Turning to the best interests of the children, the court correctly determined that when paternity is in question for a child born during a marriage, the Estates and Trusts Article applies "because it presents the 'more satisfactory' and 'less traumatic' means of establishing paternity," *Ashley v. Mattingly*, 176 Md. App. 38, 58 (2007) (quoting *Evans v. Wilson*, 382 Md. 614, 628 (2004)), and creates a presumption of legitimacy for children born to a married mother. ET § 1-206(a). Proceeding with the presumption of legitimacy, the court sought to determine whether it was in the best interest of each child to undergo

---

[1] We note that the strict waiver of counsel requirements embodied in Maryland Rule 11-106(b) do not apply to a parent's waiver of his or her statutory right to counsel in a CINA case. *In re Alijah Q.*, 195 Md. App. 491, 518 (2010). Nevertheless, certain minimal protections must govern the waiver of counsel. *Id.* at 519.

genetic testing to determine parentage.

The court received testimony from both Mother and Mr. B. In the matter of Katerine L., Mother testified that she and Mr. B. were no longer together on December 23, 2005, when Katerine L. was born. She further testified that Katerine L.'s father is Mr. Alex L., who currently resides in El Salvador. Although Mr. L. is aware that he is Katerine L.'s father and Katerine recognizes him as such, Mother was unable to locate him for the CINA hearing.

In the matter of Alex F., Mother testified that Alex F. was born on December 27, 2001, when Mother and Mr. B. were no longer together. Although she does not know the identity of Alex F.'s biological father, Mother testified that she is certain that Mr. B. is not the biological father. Regarding the remaining two children, Adrianna L. and Eric B., Mother identified the two putative biological fathers, Joseph F. and Abdul K., respectively. Both of those men agreed to submit to genetic paternity testing, which the court then allowed as being in the best interests of the children.

Mr. B. testified that he and Mother lived together for "a year or two years." Mr. B. also testified that aside from meeting Alex F. briefly, he has had no contact with the children and has not spoken with Mother in "five or six years." Mr. B. testified that the only contact he has had with Mother since their separation was when he attempted to gather the necessary papers for divorce. Mr. B., however, failed to file the divorce action, citing a lack of financial ability.

The circuit court issued an oral ruling on the issue of genetic testing for each of the children on October 4, 2013. Regarding Adriana L., the court stated:

> I find that it is in her best interest for parentage testing to be done on [Mr. F.] who has indicated through counsel that he believes he may be the parent, that mother has indicated that she believes he may be the parent and Mr. B[.], who is here, testified that he doesn't believe he is the parent, and the credible facts which mostly came from [Mother], are that she stopped having relations with Mr. B[.] a couple years before Adriana's birth.

Regarding Eric B., the circuit court found:

> That the credible evidence supports the finding that it is in Eric's best interest to allow parentage testing on [Mr. K.] to determine whether he is the biological father. Again, it is clear from the testimony, mostly [Mother]'s, but also Mr. B[.], and the letter from Mr. Goss which indicates that [Mr. K.] believes he may be – or to put it another way, that it's a possibility that he may be the child's father, and there's no relationship between Eric and Mr. B[.] of any kind, that it's in Eric's best interest for the testing to be done.

Regarding Katerine L., the circuit court stated:

> The testimony of [Mother] is that Katerine's father is [Mr. L.]. Katerine is the presumptive child of Mr. B[.]. I would be happy for the department to find a way to do the testing. So, again, the question here isn't who's the parent, the question is, is it in the child's best interest to rebut the presumption of parentage. The answer is yes, if we can find [Mr. L.] to test. If we never find [Mr. L.] to test, the presumption will never be rebutted, so the child will be presumed to be Mr. B[.]'s child.

Regarding Alex F., the court stated:

> The testimony of the two parents is, to be charitable, murky, about their relations at the time when Alex might have been conceived. He was born in 2001. Mr. B[.], I think, was here today to make sure that he didn't end up responsible for any child, even the one who was born the day after he married Ms. B[.], and I think some of his testimony was not credible, and he did contradict himself several times. That having been said, I have no evidence other than that. The parents were probably still having sexual relations with

6

one another when Alex was conceived because that would have been three or maybe four months after they got married. So, I find that the testimony is not credible to rebut the presumption of parentage, and I will not order testing for Alex.

On October 8, 2013, the circuit court entered two separate orders denying parentage testing for Katerine L. and Alex F. and found that the testing was not in the children's best interests.[2]

**Review Hearing: February 21, 2014**

At the review hearing held on February 21, 2014, the court received additional

---

[2] Pursuant to Maryland Code (1984, 2012 Repl. Vol.) Family Law Article ("FL") § 5-1005(a), "[a]n equity court may determine the legitimacy of a child pursuant to § 1-208 of the Estates and Trusts Article." When the paternity of a child born of a marriage is contested, "the court must weigh the various interests of the parties and, in particular, consider whether blood or genetic testing would be in the best interests of [the child]." *Evans*, 382 Md. at 629. In *Turner v. Whisted*, the Court of Appeals stated:

> The criteria for determining the child's best interests in cases of disputed paternity include consideration of the stability of the child's current home environment, whether there is an ongoing family unit, and the child's physical, mental, and emotional needs. An important consideration is the child's past relationship with the putative father. Finally, other factors might even include the child's ability to ascertain genetic information for the purpose of medical treatment and genealogical history.

327 Md. 106, 116-17 (1992) (internal citations omitted).

Rather than focus on any single factor, the Court of Appeals has advocated a balanced approach reflective of "the court's paramount concern of protecting [the child's] best interests" when determining whether a blood or genetic test should be ordered upon a showing of good cause sufficient to overcome the statutory presumption. *Kamp v. Dep't of Human Servs.*, 410 Md. 645, 659-61 (2009) (quoting *Turner*, 327 Md. at 117).

7

evidence pertaining to the parentage issue. Blood test results for Adrianna L. established a 99.99% probability that Mr. F. is Adrianna's biological father, and blood test results for Eric B. established a 99.99% probability that Mr. K. is Eric B.'s biological father. Accordingly, the court ruled that Mr. F. was Adrianna L.'s father and Mr. K. was Eric B.'s father.

The court also received the certificate of live birth of Alex F. listing Mr. M. as his father. Presented with this new information, the court stated: "now we have two presumptions instead of just one." Although the certificate of birth created a presumption that Mr. M. was the father, the presumption that Mr. B. was the actual father was supported by the fact that Alex was conceived before Mother and Mr. B. ceased cohabitating, and Mother's contention at the hearing remained that she was uncertain of the identity of Alex's father. The court then returned to the best interests analysis, stating:[3]

I guess the only thing really we can do is this. I think there has to be some

---

[3] To the extent that the circuit court's ruling implies that there must be a putative father other than the presumptive legal father available for testing in order to satisfy the best interests of the child standard, we note—without deciding the specific question before us—that the best interests standard applied to requests for parentage testing of children born in wedlock, as articulated by the Courts of Maryland, requires a broad analysis with no single dispositive factor. *See Turner,* 327 Md. at 116 (citing *Matter of Marriage of Ross,* 783 P.2d 331, 338 (Kan. 1989)) (stating a court must consider the best interests of a child prior to ordering a blood test to determine whether the presumed parent is the biological parent); *see also Miles v. Stovall,* 132 Md. App. 71, 82-83 (2000) (holding, in a child support case, that former husband was entitled to blood tests to rebut presumption of paternity). However, we note that here it appears the court took numerous factors into consideration other than whether the putative father was available for testing, including the fact that Alex F. was born during the marriage and during the time Mr. and Mrs. B. were cohabitating.

efforts to try to locate Mr. [M.] before I can make a determination about what, if anything, I ought to be doing. I mean, I've already heard from Mr. B[.] about his position on who he's the father of, and made some determinations. One of which is that he's the child's father because he's the child's presumptive parent. Obviously the name of another man on the birth certificate raises a question. But unless we can answer that question some better way than what I've got now, I would be hard pressed to say that this rebuts the presumption of Mr. B[.]'s parentage.

At the conclusion of the hearing, all four children remained designated as CINA and committed to the Department for placement in foster care. Mother was granted supervised visitation and was required to continue in her treatment plan, including therapy, prescribed medications, participation in parenting education, and substance abuse treatment. Mr. B. remained the presumptive legal father of Katerine L. and Alex F. and was ordered to meet with the Department to explore necessary services. He has not, however, requested visitation with any of the children. Mr. F. and Mr. K. were also ordered to meet with the Department to discuss services and the possibility of visitation. The court also continued the default permanency plan recommendation of reunification.

**The March 7, 2014, Petition to Vacate**

On March 7, 2014, Mr. B. filed a Petition to Vacate Paternity of [Mr. B.] and Request Determination by DNA. Mr. B.'s petition argues, among other things, that it is in the best interests of the children "to know their true genetic and medical history especially given the lack of any relationship with [Mr. B.]," and that the "children will receive less harm now than in the future to learn that all of the adults whom they trusted were not truthful about their parentage." In response, the circuit court issued an Order

9

granting DNA/Genetic Testing of Katerine L. and Alex F. on March 18, 2014. However, on April 1, 2014, the court rescinded that order as improvidently granted, pursuant to its revisory power under Maryland Rule 11-116, and denied Mr. B.'s petition to vacate. Thereafter, Mr. B. initiated this appeal.[4]

## DISCUSSION

Generally, a party has the right to appeal from a final judgment. Maryland Code (1974, 2013 Repl. Vol.), Courts and Judicial Proceedings Article ("CJP") § 12–301. Appellees assert, however, that no final judgment has been entered and therefore this appeal must be dismissed under Maryland Rule 8-602(a)(1). We agree. CJP § 12-301 states, in pertinent part:

> [A] party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law.

---

[4] Appellant notes appeal from "[1] the April 2, 2014 rescission of a Final Order entered on March 18, 2014 . . . [2] the February 21, 2014 review hearing, [3] the October 11, 2013, hearing and [4] the March 4, 2014 renewed petition of [Mr. B.] for DNA testing/Order to set aside paternity." Because Appellant's notice of appeal was filed on April 8, 2014, an appeal of any order or decision issued prior to March 9, 2014, is untimely. Regarding the rescinded order, the Maryland Rules, Juvenile Causes subtitle, 11-116 provides, in pertinent part: "An order of the court may be modified or vacated if the court finds that action to be in the best interest of the child or the public," and "[t]he court may proceed under section a. of this Rule on its own motion." What remains on appeal before this Court, therefore, is the April 2, 2014, order of the circuit court denying Appellant's renewed request for genetic testing.

A ruling of the circuit court constitutes a final judgment when it either determines and concludes the rights of the parties involved or denies a party the means to "prosecut[e] or defend[] his or her rights and interests in the subject matter of the proceeding." *In re Samone H.*, 385 Md. 282, 297-98 (2005) (quoting *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41 (1989)). In determining whether a particular court order or ruling is appealable as a final judgment, we assess whether any further order was to be issued or whether any further action was to be taken in the case. *In re Samone H.*, 385 Md. at 298 (citing *Rohrbeck,* 318 Md. at 41-42).

In the matter before us, the February 21, 2014, review hearing and Appellant's subsequent petition for genetic testing were not Appellant's last opportunities to request genetic testing. Clearly, further action in the case was pending by virtue of the statutory mandate. "The purpose of CINA proceedings is 'to protect children and promote their best interests.'" *In re Priscilla B.*, 214 Md. App. 600, 622 (2013) (quoting *In re Rachel T.,* 77 Md. App. 20, 28 (1988)). Accordingly, the court in a CINA case "must be able to monitor the matching of children's needs with services and to step in when the proposed disposition fails to meet the needs of the child." *In re Danielle B.,* 78 Md. App. 41, 68 (1989) (citation omitted). Indeed, the court is obliged "to act as a monitor in order to review, order and enforce the delivery of specific services and treatment for children who have been adjudicated CINA." *Id.* at 68–69.

11

Once the court has obtained jurisdiction over a child in a CINA case, "that jurisdiction continues in that case until the child reaches the age of 21 years, unless the court terminates the case." CJP § 3-804. Further, the court is required to "conduct a hearing to review the status of each child under its jurisdiction within 6 months after the filing of the first [CINA] petition and at least every 6 months thereafter" to evaluate the safety of the child, the appropriateness of continued Department services, and to "project a reasonable date by which the child may be returned to and safely maintained in the home or placed for adoption or under a legal guardianship." CJP § 3-816.2. Even once a permanency plan is established, the court must periodically review the case until commitment with the Department is terminated. *See* CJP § 3-823(h). Thus, just as the circuit court noted, "to some degree [CINA proceedings] are fluid."

Here, the court may revisit the issue of genetic testing for Katerine L. and Alex F. at any review hearing. In fact, as noted above, at the February 21, 2014 review hearing the court stated: "to some degree these things are fluid so that if I could have some indication, at some point, about a different outcome, I'd certainly be willing to listen to the testimony." A permanency plan hearing was scheduled for June 9, 2014. Further, the Review Hearing Order, entered on February 27, 2014, acknowledges that the court will, when appropriate, revisit the issue of paternity regarding at least one of the children, finding:

> THAT the Department reports that [Mr. M.] is listed as Alex's father on Alex's birth certificate. Mr. [M.] was Mother's boyfriend when Alex was

born. Mother is unsure if Mr. [M.] is Alex's biological father. The department will try to find Mr. [M.]

Moreover, although the court's decision to deny genetic testing for Katerine L. and Alex F. was entered in the October 8, 2013, order, the court did, in fact, re-examine the issue on February 21, 2014. At the review hearing—after receiving and considering as a new exhibit Alex F.'s birth certificate listing Mr. M. as his father—the court stated: "given the information that I have about Mr. [M.], at this point, [the court is] not really able to make a determination different from the one I've already made." Accordingly, although the court denied the request to change its earlier ruling on genetic testing at the February 21st hearing, the willingness of the court to receive additional information and revisit the issue of genetic testing when appropriate is apparent.

Therefore, we find that the order of the court denying genetic testing does not constitute a final judgment and is an interlocutory order—ordinarily not appealable unless it falls within one of the statutory exceptions set forth in CJP § 12-303. *In re Samone H.*, 385 Md. at 298.

Conventional application of the final judgment rule does not always provide suitable relief in juvenile causes and CINA cases, which can progress over several years and normally involve ongoing interventions by the court. CJP § 12-303(3)(x), however, permits an appeal from an interlocutory order "[d]epriving a parent, grandparent, or natural guardian of the care and custody of his child, or changing the terms of such an order." In applying this exception, the Court of Appeals has recognized that parents have a

13

fundamental right to raise their children and has instructed that "orders [that] adversely affect a parent's rights to care and custody [] entitle the parent to an immediate appeal." *In re Karl H*., 394 Md. 402, 431 (2006). In determining whether an interlocutory order is appealable in the context of custody cases:

> [T]he focus should be on whether the order and the extent to which that order changes the antecedent custody order. It is immaterial that the order appealed from emanated from the permanency planning hearing or from the periodic review hearing. If the change could deprive a parent of the fundamental right to care and custody of his or her child, whether immediately or in the future, the order is an appealable interlocutory order.

*Id.* at 430.

The order denying Appellant's request for genetic testing did not change the antecedent custody order as to Katerine L. and Alex F., nor did it *adversely* affect Appellant's right to the care and custody of Katerine L. and Alex F. *In re Karl H*., 394 Md. at 431; *see In re Samone H*., 385 Md. at 315-16 (Trial court's denial of a mother's motion for an independent clinical assessment to determine whether a bond existed between her and her children was not an appealable order under § 12–303(3)(x) because the order did not meet the standard of depriving the mother of the care and custody of her children or changing the terms of the prior order to detrimentally impact the mother's fundamental rights). Moreover, as counsel for the Department pointed out in oral argument, the children are entitled to the presumption of legitimacy throughout the CINA

14

process unless and until the court determines it is in their best interests to undergo parentage testing.[5]

Furthermore, as the Department argues, in CINA cases, a decision whether to order genetic testing to establish paternity may be analyzed as a discovery request for a physical examination under Maryland Rule 2-423. *See Turner,* 327 Md. at 114 ("A motion for blood tests made under the Estates & Trusts Article is best analyzed as a request for a physical examination under Maryland Rule 2-423, and the court has discretion to grant or deny the blood tests."). Pursuant to Rule 2-423, "[w]hen the mental or physical condition or characteristic of a party or of a person in the custody or under the legal control of a party is in controversy, the court may order the party to submit to a mental or physical examination by a suitably licensed or certified examiner." Such discovery orders are interlocutory and not ordinarily appealable prior to a final judgment. *In re Foley*, 373 Md. 627, 634 (2003) (citing *Montgomery Cnty. v. Stevens*, 337 Md. 471, 477 (1995)).

Finally, Mr. B. contends that this Court may review the order of the circuit court pursuant to the collateral order doctrine. The rule that a decision of a circuit court is not appealable until it constitutes a final judgment, does not apply to orders that are collateral to the proceeding. *Gillespie v. Gillespie*, 206 Md. App. 146, 153 n.2 (2012). The

---

[5]     As acknowledged by the Appellant in oral argument, Mr. B. filed a complaint for absolute divorce in the Circuit Court for Montgomery County on July 28, 2014. As part of that proceeding, Mr. B. may contest paternity through a related action pursuant to sections 5-1001 to 5-1048 of the Family Law Article.

15

"collateral order doctrine 'treats as final and appealable a limited class of orders which do not terminate the litigation in the trial court.'" *In re Foley*, 373 Md. at 633 (quoting *Bunting v. State,* 312 Md. 472, 476 (1988)).

Based upon a judicially created fiction, the collateral order doctrine permits immediate appellate review of an order that shares sufficient attributes of a final judgment. *Harris v. State*, 420 Md. 300, 321 (2011). Nonetheless, the doctrine is a very limited exception "entertained only in extraordinary circumstances," and it has four requirements. *In re Samone H.*, 385 Md. at 316 (quoting *Pittsburgh Corning v. James,* 353 Md. 657, 666 (1999). The Court of Appeals in *Pittsburgh Corning* delineated the four prerequisites for a prejudgment order to fall within this limited exception:

> We have made clear, time and again, as has the United States Supreme Court, that the collateral order doctrine is a very narrow exception to the general rule that appellate review ordinarily must await the entry of a final judgment disposing of all claims against all parties. It is applicable to a 'small class' of cases in which the interlocutory order sought to be reviewed (1) conclusively determines the disputed question, (2) resolves an important issue, (3) resolves an issue that is completely separate from the merits of the action, *and* (4) would be effectively unreviewable if the appeal had to await the entry of a final judgment. *See Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 92, 394 A.2d 801, 804 (1978); *Clark v. Elza,* 286 Md. 208, 213, 406 A.2d 922, 925 (1979); *Shoemaker v. Smith,* 353 Md. 143, 725 A.2d 549 (1999).

The four elements of the test are conjunctive in nature, and in order for a prejudgment order to be appealable, each of the four elements must be met. *In re Franklin P.,* 366 Md. 306, 327 (2001).

Here, the circuit court's denial of Mr. B.'s request for genetic testing does not conclusively determine the question of parentage for Katerine L. and Alex F. As noted above, Mr. B. may raise the issue again at any of the statutorily mandated review hearings. At that time, if the court determines that genetic testing for the determination of paternity is in the best interests of the children, then it may order such testing pursuant to FL § 5-1005(a). At each CINA hearing, the court is required to inquire into the identity and address of each parent of the child and, "[i]f appropriate, refer the parents to the appropriate support enforcement agency to establish paternity and support." CJP § 3–822(a). Thus, the collateral order doctrine is unavailable as a means to appeal the court's order in this case.

Because the order denying Appellant's request for genetic testing to determine paternity in the underlying CINA proceedings was not a final judgment, does not fall within one of the statutory exceptions set forth in CJP § 12-303 permitting certain interlocutory appeals, and does not meet the strict requirements of the collateral order doctrine, the order is not reviewable by this Court.

**APPEAL DISMISSED; APPELLANT TO PAY THE COSTS.**

17